IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| BENJU BASBA, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. 8:19-cv-380-PX |
| LIU XUEJIE, *et al.*, | * | |
| Defendants. | * | |
| | *** | |

## MEMORANDUM OPINION

Pending before the Court is the Motion for Default Judgment filed by Plaintiffs Benju Basba and 55 other individuals. ECF No. 17. Defendants Liu Xuejie ("Xuejie") and Liu Xuelin ("Liu"), have not responded to the motion or entered an appearance, and the time for doing so has passed. *See* Loc. R. 105.2.a. The matter has been briefed and no hearing is necessary. *See* Loc. R. 105.6. For the reasons below, Plaintiffs' Motion for Default Judgment is GRANTED IN PART and DENIED IN PART.

**I.  Background**

According to the Complaint, Plaintiff Benju Basba is a Buddhist religious leader, who, along with 55 members of his congregation, agreed to invest in Defendant Liu's businesses. ECF No. 1 ¶¶ 1, 6–61. Liu held himself out as a well-respected investor with close family ties to businesses in China. *Id.* ¶ 71. His son, Liu Wei, is the Chief Executive Officer of KK Culture Holding Limited ("KKCHL") and Liu's sister, Xuejie, was an executive at Liangpeng Haoyou Web Technology Limited ("Liangpeng"). *Id.* ¶¶ 71 n. 7, 99, 101. On at least four occasions, Liu attended conferences with Basba and his followers where Liu encouraged them to invest in his family's businesses, promising significant returns on their money. ECF No. 1 ¶¶ 69–84, 92–97.

Liu first met Basba through a mutual acquaintance, Wang Baoning, at a 2015 conference

in Malaysia. *Id.* ¶¶ 69–70, 129–130. Liu and Xuejie had planned the introduction with Baoning in advance, in hopes of gaining access to Basba whom they knew to be an influential leader with many followers. *Id.* ¶ 129. Liu held himself out to Basba as a skilled investor and promised that if Basba and his followers invested in KKCHL, where Liu's son was CEO, they would at least double their money within the year. *Id.* ¶¶ 71–73, 107–08.

After the Malaysia conference, Liu registered Liangpeng in Shenzhen, China. *Id.* ¶ 74. Xuejie was listed as an executive at Liangpeng although she resided in Maryland. *Id.* ¶ 86. Between December 2015 and February 2016, most of the Plaintiffs invested in KKCHL, each giving Liu personally or wiring amounts ranging from $114 to $30,302 and totaling nearly $400,000. *Id.* ¶¶ 75, 108; ECF No. 17-2. The account designated for Plaintiffs' funds was linked not to KKCHL, as promised, but to Liangpeng. ECF No. 1 ¶ 98.

In April 2016, Liu, Basba, and certain other Plaintiffs met in South Korea. ECF No. 1 ¶¶ 77–78. At this meeting, Liu encouraged Plaintiffs to invest in Liangpeng, again promising Plaintiffs that their investments would at least double within the year. *Id.* ¶¶ 77–80, 111–13. Liu also represented that KKCHL planned to acquire Liangpeng, and this acquisition would result in even greater gains for Plaintiffs. *Id.* ¶ 79.

Two months later, in June 2016, Basba and the Plaintiffs met with Liu again, this time in California. By now, the Chinese government had designated Liangpeng as "abnormal" because officials were unable to contact company representatives. ECF No. 1 ¶¶ 87–88, n.9. Shortly thereafter, the company liquidated assets and then officially dissolved January 1, 2017. *Id.* ¶¶ 89–91. Despite this, Liu continued to encourage the Plaintiffs to invest in Lianpeng. *Id.* ¶¶ 83–84, 92–96. In the months following the California conference, Plaintiffs Basba, Rong Liu, and Ben Yunlong Dee invested $513,000 into Liu's ventures. *Id.* ¶¶ 83–84.

2

At a conference in Saipei in early 2017, Liu informed some Plaintiffs that his son would see to it that KKCHL acquired Liangpeng and again emphasized that the merger would create major profits for its investors. *Id.* ¶¶ 94–96. Liu pressed this matter even though he knew Lianpeng had been dissolved. As a result, Plaintiffs invested more money. *Id.* ¶ 97.

When speaking with Plaintiffs, Liu always encouraged them either to give him money directly or through wire transfer not into an account held personally by Xuejie. ECF No. 1 ¶¶ 66, 98–100, 131. Xuejie, in turn, used the funds to pay for and maintain various properties in Maryland and Texas. *Id.* ¶¶101–02.

Plaintiffs aver that they have not received any of the promised gains from their investments after having invested collectively nearly a million dollars in Liu's ventures. ECF No. 1 ¶¶ 6–61, 105; ECF No. 17-2. Further, their repeated requests for Liu to return their money have gone unheeded, although in September 2018, a mutual acquaintance approached Basba and told him that Liu wanted more time to repay the debts he owed. ECF No. 1 ¶¶ 104–05, 109.

Accordingly, Plaintiffs filed suit in this Court on February 7, 2019, alleging breach of contract (Count I), detrimental reliance (Count II), unjust enrichment (Count III), conspiracy (Count IV), fraud (Count V), fraudulent misrepresentation (Count VI), negligent misrepresentation (Count VII), conversion (Count VIII), and aiding and abetting (Count IX). ECF No. 1. Plaintiffs' claims sound in both contract and tort. With regard to Plaintiffs' contract claims, Plaintiffs contend that in Malaysia in June 2015 Liu falsely promised Plaintiffs that he would invest their money in KKCHL and at least double their investment. *Id.* ¶ 107. Between December 2015 and February 2016, 53 of the Plaintiffs entered into an oral contract when they accepted Liu's offer by giving him money with the expectation of profits from his effort

3

investing in KKCHL and Liangpeng.  *Id.* ¶¶ 108–09.  Liu breached that contract by failing to provide the promised returns or respond to Plaintiffs attempts to contact him.  *Id.* ¶ 109.

Plaintiffs tort claims, in essence, arise from the fraudulent investment scheme that Liu and Xuejie had promoted.  Specifically, Defendants arranged to have Liu introduced to Basba and his followers so he could convince Plaintiffs to "invest" in exchange for easy, but illusory, returns.  Liu directed Xuejie to register a sham company to add legitimacy to these promises.  And at the time Liu made such promises, he knew that at least one of his company's was defunct and he had no intention of making good on his promises to Plaintiffs.

After difficulties in perfecting service, both Xuejie and Liu were served on August 13 and August 21, 2019 respectively.  ECF Nos. 11–12.  Neither has answered or responded.  ECF Nos. 14–16.  The Clerk entered default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, and Plaintiffs moved for default judgment.  ECF No. 17.

**II.     Discussion**

Rule 55(a) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  Thereafter, the court may enter default judgment at the plaintiff's request and with notice to the defaulting party.  Fed. R. Civ. P. 55(b)(2).  A plaintiff, however, is not automatically entitled to default judgment simply because the defendant has not responded.  Whether to enter default judgment is left to the sound discretion of the court.  *See, e.g.*, *Choice Hotels Int'l, Inc. v. Jai Shree Navdurga*, *LLC*, No. DKC-11-2893, 2012 WL 5995248, at *1 (D. Md. Nov. 29, 2012); *see also Choice Hotels Int'l, Inc. v. Austin Area Hospitality, Inc.*, No. TDC-15-0516, 2015 WL 6123523, at *1 (D. Md. Oct. 14, 2015).

Although "the Fourth Circuit has a 'strong policy that cases be decided on the merits,'" *Disney Enters. v. Delane*, 446 F. Supp. 2d 402, 405 (D. Md. 2006) (quoting *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)), "default judgment is available when the 'adversary process has been halted because of an essentially unresponsive party'" *id.* (quoting *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005)), and thus is proper when a defendant is unresponsive. *See Disney Enters.*, 446 F. Supp. 2d at 405–06 (finding appropriate the entry of default judgment where the defendant had been properly served with the complaint and did not respond, despite repeated attempts to contact him).

When considering a motion for default judgment, the Court takes as true all well-pleaded factual allegations in the complaint, other than those pertaining to damages. *See* Fed. R. Civ. P. 8(b)(6); *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established.") (citation and internal quotation marks omitted). District courts analyzing default judgments have applied the standards articulated by the United States Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), to determine whether allegations within the complaint are "well-pleaded." *See, e.g., Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 544 (D. Md. 2011); *Russell v. Railey*, No. DKC-08-2468, 2012 WL 1190972 at *2–*3 (D. Md. Apr. 9, 2012); *U.S. v. Nazarian*, No. DKC-10-2962, 2011 WL 5149832 at *2–*3 (D. Md. Oct. 27, 2011). Where a complaint offers only "labels and conclusions" or "naked assertion[s] devoid of further factual enhancement," the allegations therein are not well-pleaded and, consistent with the Court's discretion to grant default judgment, relief should be denied. *See, e.g., Balt. Line Handling Co.*, 771 F. Supp. 2d at 544 ("The record

lacks any specific allegations of fact that 'show' why those conclusions are warranted.") (internal quotation marks omitted).

Once liability is established, the Court cannot rely solely on the Complaint to assess damages. *See Trs. of the Elec. Welfare Trust Fund v. MH Passa Elec. Contracting, Inc.*, No. DKC-08-2805, 2009 WL 2982951, at *1 (D. Md. Sept. 14, 2009) ("Upon default, the well-pled allegations in a complaint as to liability are taken as true, although the allegations as to damages are not."). The Court may only award damages without a hearing if the record supports the damages requested. *See Pentech Fin. Servs., Inc. v. Old Dominion Saw Works, Inc.*, No. 6:09-cv-00004, 2009 WL 1872535, at *2 (W.D. Va. June 30, 2009) (concluding that there was "no need to convene a formal evidentiary hearing on the issue of damages" after default judgment was entered against defendant because plaintiff submitted affidavits and printouts of electronic records establishing the amount of damages it sought).

Plaintiffs plead an array of claims with overlapping theories of relief. As more fully discussed below, the Court finds that default judgment is warranted on all claims except conversion.

### A.     Choice of Law

As a preliminary matter, the Court must determine which law applies to Plaintiffs' claims. Because the Court retains diversity jurisdiction in this district, it applies Maryland's choice of law rules. *See Wells v. Liddy*, 186 F.3d 505, 521 (4th Cir. 1999) ("A federal court sitting in diversity must apply the choice-of-law rules from the forum state."). For causes of action sounding in tort, Maryland adheres to the *lex loci delicti* rule, applying the substantive law of the state in which the alleged tort took place. *See Philip Morris Inc. v. Angeletti*, 358 Md. 689, 744–45 (2000). For economic torts such as conversion and fraud, Maryland courts view the

injuries as occurring "where the injured party resides." *Simone v. VSL Pharm., Inc.*, No. TDC-15-1356, 2017 WL 66323, at *2 (D. Md. Jan. 5, 2017). Where causes of action sound in contract, Maryland follows the doctrine of *lex loci contractus*, applying the substantive law of the place where the contract was formed—in this case, where the offer was accepted. *Allstate Ins. Co. v. Hart*, 327 Md. 526, 529 (1992); *Konover Prop. Tr., Inc. v. WHE Assocs., Inc.*, 142 Md. App. 476, 490 (2002) ("For choice-of-law purposes, a contract is made where the last act necessary to make the contract binding occurs.").

Because certain alleged conduct occurred overseas, the Court further notes that it could not apply foreign law unless "the requirements of Rule 44.1 of the Federal Rules of Civil Procedure are met." *Baker v. Booz Allen Hamilton, Inc.*, 358 F. App'x. 476, 481 (4th Cir. 2009) (citing *Ferrostaal, Inc. v. M/V Sea Phoenix*, 447 F.3d 212, 216 (3d Cir. 2006)). Rule 44.1 requires that "[a] party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing." Fed. R. Civ. P. 44.1. Where no party satisfies this burden under Rule 44.1, the Court should apply the laws of the forum state—here Maryland. *See Baker*, 358 F. App'x at 481 (citing *Ferrostaal*, 447 F.3d at 216). The rule grants federal courts "broad authority to conduct their own independent research to determine foreign law but imposes no duty upon them to do so." *Id.*

Turning first to the tort claims, none of the Plaintiffs reside in this jurisdiction. Instead, 52 of the 56 Plaintiffs reside abroad, in Malaysia, China, and Taiwan. ECF No. 1 at 1–6. Others live in California, and Georgia. *Id.* at 1, 5–6. Plaintiffs were thus injured in those jurisdictions.

Analysis of Plaintiffs' contract claims suggest a similar result. Plaintiffs assert they entered into an oral contract when they gave Liu money at or close in time to the conferences in Malaysia or California. ECF No. 17-2; 1 ¶¶ 75, 84. The Court presumes, absent evidence or

7

argument to the contrary, that Plaintiffs who gave money after the Malaysia conference did so either at the conference or from their home jurisdictions. *Cf. Cunney v. Patrick Commc'ns, LLC*, 191 F. Supp. 3d 480, 489 (D. Md. 2016) (presuming that Plaintiff accepted offer in home state). Both *lex loci delicti* and *lex loci contractus* principles dictate, then, that the Court should apply the substantive law of Malaysia, China, Taiwan, California, and Georgia to the claims of the Plaintiffs who reside or gave money in those jurisdictions.

No party has offered any proof to satisfy Rule 44.1. Indeed, Plaintiffs have not addressed the choice-of-law question at all. They argue simply that they are entitled to default judgment by reference to Maryland law. *See* ECF No. 17. Where parties fail to adequately address choice-of-law issues, Maryland choice-of-law principles dictate that the Court may exercise its discretion and "presume that the law of the other jurisdiction is the same as Maryland law." *Chambco v. Urban Masonry Corp.*, 338 Md. 417, 421 (1995); *Cunney*, 191 F. Supp. 3d at 489 (D. Md. 2016) (applying *Chambco* presumption); *Howes v. Wells Fargo Bank, N.A.*, Civ. No. ELH-14-2814, 2015 WL 5836924, at *24 (D. Md. Sept. 30, 2015) (same); *Kent Constr. Co. v. Glob. Force Auction Grp., LLC*, Civ. No. TJS-12-2839, 2015 WL 5315565, at *3 (D. Md. Sept. 10, 2015) (same). Therefore, the Court will apply Maryland law.

    **B.**    **Breach of Contract (Count I)**

Under Maryland law, a breach of contract amounts to a "failure, without legal excuse, to perform any promise that forms the whole or part of a contract." *Weaver v. ZeniMax Media, Inc.*, 175 Md. App. 16, 51 (2007) (quoting 23 Richard A. Lord, Williston on Contracts § 63:1 (4th ed., Supp. 2006)). *See also* Restatement (Second) of Contracts § 1, at 5 (Am. L. Inst. 1981). A contract is formed when a party accepts an offer made by another. *Prince George's Cnty. v. Silverman,* 58 Md. App. 41, 57 (1984).

Mutual agreement between the parties is an essential requirement of every contract. *Macsherry v. Sparrows Point, LLC*, No. ELH-15-00022, 2015 WL 6460261, at *9 (D. Md. Oct. 23, 2015). Where a party does not intend to perform at the time of offer, that party's subjective intent is irrelevant. Rather, the intention manifested by the words of the agreement, as interpreted by a reasonable person, controls. *See Ray v. William G. Eurice & Bros.,* 201 Md. 115, 127 (1952) ("The only intent of the parties to a contract which is essential, is an intent to say the words and do the acts which constitute their manifestation…") (citing Williston on Contracts § 23).

The Court finds that the Complaint facts, taken as true, establish that the parties formed a valid oral contract. In return for Plaintiffs' investment, Liu promised a handsome rate of return on the KKCHL or Liangpeng ventures. Plaintiffs accepted Liu's offer by giving him nearly a million dollars to invest. Liu then breached this promise and ghosted the Plaintiffs. Therefore, Plaintiffs have pleaded sufficient facts to support liability as to breach of contract.[1]

### C. Conversion (Count VIII)

Maryland defines the tort of conversion as "the wrongful deprivation of a person of property to the possession of which he is entitled" and "may consist of a wrongful, tortious or unlawful taking of property from the possession of another by theft, trespass, duress, or fraud and without his consent. . . ." *Darcar Motors of Silver Spring, Inc. v. Borzym*, 379 Md. 249, 262 (2004) (quoting *Wallace v. Lechman & Johnson, Inc.*, 354 Md. 622, 633 (1999)). Conversion also requires a showing of intent. A plaintiff must demonstrate that the defendant intended to

---

[1] Based on the same Complaint facts, the Court grants default on the unjust enrichment claim (Count III), albeit technically in the alternative to the breach of contract claim. Unjust enrichment is available where "circumstances are such that justice warrants a recovery as though there had been a promise." *County Comr's of Caroline County v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 94-95 (2000) (quoting Restatement (Second) of Contracts, § 4 (Am. L Inst. 1981)). Accordingly, in the event the trier of fact found no express contract had been formed, this liability theory presents an alternative avenue to relief.

exercise control over the property at issue in a manner "inconsistent with the plaintiff's rights." *Id.*

Under the original common law rule, a claim for conversion could not lie unless the property at issue was tangible. *Allied Inv. Corp. v. Jasen*, 354 Md. 547, 560 (1999). The modern rule recognizes some exceptions to that requirement, but generally monies are considered intangible and not subject to a claim for conversion unless defendant converted segregated or specifically identifiable funds. *Allied Inv.*, 354 Md. at 564. If a defendant commingles the monies with other funds, such as by depositing them in a personal account, the cash loses its "specific identity." *Id.* (citing *Lawson v. Commonwealth Land Title Ins. Co.*, 69 Md. App. 476, 482–83 (1986)). This is so even if the money provided "had a specific purpose" when transferred. *Sirona Dental Sys., LLC v. Stevenson Grp., Inc.*, Civ. No. CCB-12-1253, 2013 WL 3875325, at *2–3 (D. Md. July 25, 2013).

Taking the Complaint facts as true, the conversion claim must fail. Plaintiffs assert that the funds given to Liu and Xuejie are "personal, segregable, and identifiable," but the Complaint facts belie this contention. ECF No. 1 ¶¶ 159, 166. Some Plaintiffs gave Liu cash or authorized credit card transactions while others wired money to a specific account. Nothing in the Complaint explains how such transfers were segregated so that they are sufficiently identifiable. As to the funds sent to a specific account, Xuejie put some of those funds toward maintaining real property located in Maryland and Texas. ECF No. 1 ¶¶ 101, 102. Those funds have thus lost their specific identity and Plaintiffs now seek a general debt of money owed. For that reason, Plaintiffs have failed to demonstrate either Defendant's liability on the conversion claim. *See Bahari v. Countrywide Home Loans*, Civ. No. CCB-05-2085, 2005 WL 3505604, at *5 (D. Md. Dec. 16, 2005) (holding if the defendant "merely owes a debt of money, which could be

satisfied by check or other currency besides the specific bills that [the plaintiffs] tendered, the [plaintiffs'] cause of action for conversion must fail"). The motion for default judgment on the conversion count is denied.

### D. Fraud Counts (Counts II, V, VI, VII)

The Court assesses the fraud claims collectively. *See Sass v. Andrew*, 152 Md. App. 406, 432 (2003). For claims sounding in fraud, Plaintiffs must demonstrate that Defendants (1) made a false representation to the plaintiff, (2) with knowledge of its falsity or with reckless indifference as to its truth, (3) the misrepresentation was made for the purpose of defrauding the plaintiff, (4) the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) the plaintiff suffered compensable injury as a result. *DiFranco v. Green Tomato*, *LLC*, No. 2305, 2018 WL 3202983, at *10 (Md. Ct. Spec. App. June 29, 2018) (fraudulent misrepresentation); *see also Rozen v. Greenberg*, 165 Md. App. 665, 674 (2005) (listing identical elements of fraudulent inducement). In the case of fraudulent inducement, a claim lies where a party has "been led by another's guile, surreptitiousness, or other form of deceit to enter into an agreement to his detriment." *Rozen,* 165 Md. App. at 674. "[F]raud cannot be predicated . . . upon expressions as to what will happen in the future," but "may be predicated on promises made with a present intention not to perform them." *Vales v. Preciado*, No. DKC-2005-3110, 2007 WL 9782570, at *4 (D. Md. Sept. 19, 2007) (quoting *Levin v. Singer*, 227 Md. 47, 63–64 (1961)).

Here, the Complaint makes plausible Plaintiffs fraud claims. Liu lied to Plaintiffs to induce them to "invest" in his family's businesses, one of which was defunct. He promised Plaintiffs rates of returns based on his connections to the company and purported use of Plaintiffs' funds in connection with a business merger but had no intention of putting the funds to

such use. Instead, he diverted the funds to his sister, Xuejie, who then paid unrelated debts. ECF No. 1 ¶¶ 79, 94–97, 129–33, 137, 141–43. *Cf. Xia Bi v. McAuliffe*, 927 F.3d 177, 184 (4th Cir. 2019) (finding that statements that specific buyer would purchase specific products in the future was an assertion of fact giving rise to fraud liability). Plaintiffs, reasonably believing that Liu was a reputable investor, then relied on his statements and sent him nearly a million dollars total. *Id.* ¶ 139. They did so to their detriment as none has received any money in return. Taking the facts of the Complaint as true, the Court finds that Plaintiff Liu is liable as to the fraud counts.

### E. Aiding and Abetting (Count IX)

Maryland Courts recognize the tort of aiding and abetting. *Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 340 Md. 176, 199 (1995). A defendant is liable for aiding and abetting tortious conduct if she "by any means (words, signs, or motions) encouraged, incited, aided, or abetted the direct perpetrator of the tort." *Id.* (quoting *Duke v. Feldman*, 245 Md. 454 (1967)). Liability attaches where (1) a principle actor commits a tort, (2) defendant knew about the violation of the law, and (3) "gave substantial assistance or encouragement to [the principal] to engage in the tortious conduct." *Arkansas Nursing Home Acquisition*, *LLC v. CFG Cmty. Bank*, 460 F. Supp. 3d 621, 648–49 (D. Md. 2020) (citing *Alleco.*, 340 Md. at 1999).

Taking the facts of the Complaint as true, Xuejie is liable for aiding and abetting Liu's fraudulent investment scheme. Liu, the principal, perpetrated a fraud against the Plaintiffs. That fraud suffices as the underlying tortious conduct required. Xuejie knew about Liu's fraud and worked with Liu and Wang Baoning to ensure that Liu met Basba and the other Plaintiffs to set Defendants' scheme in motion. She also registered Liangpeng to lend credibility to Liu's promises and the account where Plaintiffs sent their funds had been held in her name. ECF No. 1

¶¶ 129–133; 169–170. For these reasons, the Court has little difficulty finding Xuejie is therefore liable for aiding and abetting Liu's fraud.[2]

### F. Damages

Plaintiffs seek damages totaling $965,061.23 as a result of Defendants' misconduct but offer little evidence in support. The summary spreadsheet attached to their pleadings, without the underlying documentation, is insufficient. ECF No. 17-2. Indeed, the exhibit is no more than the averments of Plaintiffs' Complaint in spreadsheet form. Thus, Plaintiffs have failed to prove damages. The Court shall grant Plaintiffs fourteen (14 days) from the date of this Opinion and Order to supplement the evidentiary record consistent with Federal Rule of Civil Procedure 55(b)(2).

Plaintiffs also seek punitive damages "in an amount sufficient to deter further fraudulent behavior by the Defendant." ECF No. 1 at 25. Maryland law provides for punitive damages in tort actions as a sanction "for egregiously bad conduct toward the plaintiff, [and] also to deter the defendant and others contemplating similar behavior." *Bowden v. Caldor, Inc.*, 350 Md. 4, 22 (1998) (internal quotation omitted). "In the case of fraud, punitive damages may be awarded where a defendant acts with actual malice." *Legacy Inv. and Management*, *LLC*, No. WDQ-12-2877, 2014 WL 5325757 at *10 (D. Md. Oct. 17, 2004) (internal quotations omitted). Actual malice is defined as "a misrepresentation [made] with intent to deceive and actual knowledge of the falsity of the representation." *Frazier v. Castle Ford, Ltd.*, 430 Md. 144, 162 (2013). The decision to award punitive damages is within the discretion of the Court. *Philip Morris, Inc. v. Angeletti*, 358 Md. 689, 773–74 (2000). At the default judgment stage, punitive damages may be

---

[2] Similarly, the Court grants default judgment as to the conspiracy claim (Count IV). The Complaint facts establish that Liu and Xuejie entered into an agreement to commit an unlawful act, namely defrauding the Plaintiffs, and engaged in overt acts in furtherance of that agreement. *See Hoffman v. Stamper*, 385 Md. 1, 25–26 (2005).

awarded if pleaded in the Complaint and supported with evidence. *Legacy Inv.,* 2014 WL 5325757 at *9.[3]

Plaintiffs have pleaded punitive damages in the Complaint and in their motion for default judgment "in an amount sufficient to deter further fraudulent behavior by the Defendant." ECF Nos. 1 at 25; 17-1 at 4. Plaintiffs, however, have not demonstrated *actual* damages with evidence, let alone that punitive are warranted. Thus, they will be afforded the same opportunity to supplement evidence in support of this request.

### G. Attorneys' Fees & Costs

Maryland follows the common law "American Rule" under which each litigant is responsible for paying their own fees and costs. *Thomas v. Capital Medical Mgmt. Assoc.*, 189 Md. App. 439, 467 (2009). Exceptions to the rule are limited. Generally, "a prevailing party is not awarded attorney's fees 'unless (1) the parties to a contract have an agreement to that effect, (2) there is a statute that allows the imposition of such fees, (3) the wrongful conduct of a defendant forces a plaintiff into litigation with a third party, or (4) a plaintiff is forced to defend against a malicious prosecution.'" *Id.* (quoting *Nova Research Inc.* v. *Penske Truck Leasing Co.*, 405 Md. 435, 446 (2008)).

Federal courts sitting in diversity also possess inherent equitable powers to assess attorney's fees against a party in certain "narrowly defined" exceptions to the American Rule. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991) (citing *Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 259 (1975)). Relevant here, a district court may award fees and costs if

---

[3] Plaintiffs request post-judgment interest on damages. *See* ECF Nos. 1 at 25, 17-1 at 7–8. In diversity cases, "[f]ederal law, rather than state law, governs the calculation of post-judgment interest." *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 633 (4th Cir. 1999); *see also Cowan Systems, LLC v. Choctaw Transport, Inc.*, No. WDQ-11-0367, 2011 WL 2791248, at *4 (D. Md. Jul. 14, 2011). Post-judgment interest is governed by 28 U.S.C. § 1961 and shall apply on the final judgment until it is satisfied. *See Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1031–32 (4th Cir. 1993); *see also Cowan Systems*, 2011 WL 2791248, at *4.

the losing party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Alyeska Pipeline*, 421 U.S. at 258–59 (1975). Federal courts are split on the issue of whether the so-called "bad-faith exception" applies only to conduct in the course of litigation or whether conduct giving rise to the litigation may also warrant the award of fees. *Compare Lamb Eng'g & Constr. Co. v. Neb. Pub. Power Dist.,* 103 F.3d 1422, 1436–37 (8th Cir. 1997) (limiting bad faith exception to litigation conduct); *Shimman v. Int'l Union of Operating Engineer,* 744 F.2d 1226, 1233 (6th Cir. 1984); *Dow Chemical Pacific Ltd. v. Rascator Maritime S.A.,* 782 F.2d 329, 344–45 (2d Cir. 1986) (same) *with Dogherra v. Safeway Stores, Inc.*, 679 F.2d 1293, 1298 (9th Cir. 1982). While the Fourth Circuit has not squarely addressed the limits of the bad-faith exception, at least one district court in this Circuit has held that the bad-faith exception to the American Rule where the pertinent misconduct arises only from the substantive claims. *See Peterson v. Air Line Pilots Ass'n*, 622 F. Supp. 232, 238–39 (M.D.N.C. 1985) (citing *Shimman*, 744 F.2d at 1233).

Plaintiffs request attorneys' fees of "no less than $61,697.78" and costs of $15,132.75. ECF No. 17-1 at 7. They suggest that the mere existence of Liu and Xuejie's fraudulent scheme warrants an award of attorneys' fees and costs. *Id.* at 6–7. The Court cannot agree. Plaintiffs have not demonstrated that Defendants have engaged in bad-faith conduct separate from the underlying actions giving rise to this suit. Nor have they offered any evidence that their allegations would fall within any other recognized exception. Therefore, the Court will deny Plaintiffs' motion for attorneys' fees and costs.

### III. Conclusion

For the reasons stated above Plaintiffs' motion for default judgment is GRANTED in part and DENIED in part. Plaintiffs have fourteen (14) days to provide supplemental evidence of

damages. The Court DENIES award for attorneys' fees and costs.

A separate order follows.

 1/25/2021  
Date

/S/  
Paula Xinis  
United States District Judge